UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Brendon A. Cate,
    Plaintiff

    v.                                  Civil No. 06-cv-200-SM
                                      Opinion No. 2007 DNH 100
Public Service Enterprise
Group, Inc., and Aerotek, Inc.,
    Defendants


**O R D E R**

Brendon A. Cate brings this suit against Public Service Enterprise Group, Inc. ("PSEG") and Aerotek, Inc. ("Aerotek") claiming that he was improperly terminated from his position at PSEG. Specifically, Cate asserts claims of breach of contract (Count I), wrongful termination (Counts II and III), as well as violations of his due process and free speech rights guaranteed under both the state and federal constitutions (Counts IV-IX).[1] Aerotek moves to dismiss the claims asserted against it. Cate objects. For the reasons set forth below, Aerotek's motion is granted.

---

[1] Of the nine counts in the complaint, only two (Counts V and VIII) assert claims against Aerotek.

**The Legal Standard**

A claim is subject to dismissal under FED. R. CIV. P. 12(b)(6) when the plaintiff "fail[s] to state a claim upon which relief can be granted." The inquiry under Rule 12(b)(6) is limited, focusing not on "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). All facts pled in the complaint are accepted as true and inferences are drawn in the light most favorable to the plaintiff. See, e.g., Citibank v. Grupo Cupey, Inc., 382 F.3d 29, 31 (1st Cir. 2004) (quoting TAG/ICIB Servs., Inc. v. Pan Am. Grain Co., 215 F.3d 172, 175 (1st Cir. 2000)). But, claims consisting of "bald assertions" or "unsupportable conclusions" will be rejected. United States ex rel. Karvelas v. Melrose-Wakefield Hosp., 360 F.3d 220, 224 (1st Cir. 2004) (quoting Arruda v. Sears, Roebuck & Co., 310 F.3d 13, 18 (1st Cir. 2002)). "A district court may grant a 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted only if 'it clearly appears, according to the facts alleged, that the plaintiff cannot recover on any viable theory.'" Pomerleau v. W. Springfield Pub. Sch., 362 F.3d 143, 145 (1st Cir. 2004) (quoting Correa-Martinez v. Arrillaga-Belendez, 903 F.2d 49, 52 (1st Cir. 1990)).

When considering a motion to dismiss for lack of personal jurisdiction under FED. R. CIV. P. 12(b)(2), the court takes the facts pleaded in the complaint as true, and construes them "in the light most congenial to the plaintiff's jurisdictional claim." Negrón-Torres v. Verizon Commc'ns, Inc., 478 F.3d 19, 23 (1st Cir. 2007) (citing Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n., 142 F.3d 26, 34 (1st Cir. 1998)). The court also considers uncontradicted facts put forth by the defendant, but does not "credit conclusory allegations or draw farfetched inferences." Id. (citations and quotation marks omitted).

## Background

The facts, taken from the pleadings and construed in the light most favorable to Cate are as follows.

Aerotek is a staffing contractor which provides personnel services to PSEG.[2] In July of 2002, Aerotek hired Cate, a professional engineer, to work on a temporary basis as the civil construction supervisor for PSEG's new power plant construction project in Albany, New York. Cate signed an employment contract

---

[2] Although Aerotek is the named defendant in this case, the company previously operated under the name Onsite Energy Services, Inc., which was the company's name at the time of Cate's employment.

with Aerotek which specified that the employment relationship was "at-will" and that Aerotek could terminate Cate's employment at any time and without cause.  The contract also provided that Cate was subject to the rules, regulations, and policies of both Aerotek and PSEG.  Because Cate resides in Plymouth, New Hampshire, he expected to commute to the job site in New York on a weekly basis, and Aerotek agreed to reimburse him for commuting expenses, subject to PSEG's approval.

   Cate began work at the PSEG site on July 8, 2002.  He was advised that, provided his job performance was satisfactory, the job would likely last for the duration of the construction project, which was expected to be about two years.  To facilitate PSEG's reimbursement of his expenses, Cate submitted receipts along with his reimbursement requests.  During the fifth week of his employment, Cate received an e-mail from Cynthia Ross, an employee with PSEG's corporate headquarters in Newark, New Jersey, requesting that he send his receipts directly to her.  Subsequently, during his seventh week with PSEG, Cate had a chance encounter with Ross at the PSEG field office at the work site in Albany.  Brian Van Aken, an Account Manager with Aerotek, was also present.

The following week, after he submitted his weekly time and expense reports, Cate sent Ross an e-mail message containing architectural drawings of the power plant construction project, so Ross could better understand the project and what she had observed when she visited the site the week before.  Cate later realized that the drawings files were probably too big for Ross's e-mail inbox, which could result in computer problems for Ross.  Intent on apologizing, on September 2, 2002, Cate sent another e-mail message to Ross which began with the salutation "My Dear Cynthia," and explained that he was sending some pictures from a work site photo shoot as a "sign of friendship."  Cate sought confirmation of her friendship as well, writing "[i]n other words you are a friend, right?"  Cate then wrote: "I'm home this week so don't be bashful: [personal e-mail address and home phone number].  I won't."  See Compl. Ex. 4.

On September 4, 2002, Brian Van Aken, the Aerotek account manager, contacted Cate and informed him that Ross had raised concerns about the context and content of his apology e-mail.  Although Van Aken, Cate, and Ross all concluded that the situation was merely a "misunderstanding," Compl. ¶ 25, on September 5, 2002, Van Aken told Cate that PSEG had requested that Cate no longer report to the job site.  In a subsequent

5

letter to Cate, Aerotek explained that "[p]ursuant to PSEG's 'Zero Tolerance policy . . . you have been directed to no longer report to the site, and your services are no longer required by [Aerotek] to its client, PSEG." Compl. Ex. 5. Cate had not been advised of the company's "zero tolerance" policy and was unaware of the policy when he was terminated.

Believing that his termination was unlawful, Cate brought suit against PSEG and Aerotek in this court on August 17, 2004 (Case No. 04-cv-315-PB). On September 3, 2004, however, Cate filed a notice of voluntary dismissal, dismissing with prejudice the claims against PSEG, and dismissing without prejudice the claims against Aerotek (Case No. 04-cv-315-PB, document no. 3).

Cate filed this suit on May 26, 2006, using the same complaint that was filed in the earlier case.[3] On August 24, 2006, Cate filed a notice of voluntary dismissal (document no. 9) again dismissing his claims against PSEG with prejudice, and dismissing the claims against Aerotek without prejudice. Cate later moved to amend the notice of voluntary dismissal,

---

[3] Although the two are substantively identical, the complaint in the first case was signed by Cate's counsel; the complaint in this case was filed by Cate, pro se.

explaining that he intended only to dismiss PSEG (document no. 10). The court granted the motion on October 27, 2006 (document no. 12).

Of the nine counts pleaded in the complaint,[4] only two allege conduct by Aerotek. Specifically, Cate asserts that Aerotek violated his right to substantive due process protected by both the federal (Count V) and state (Count VIII) constitutions.

## Discussion

Aerotek moves to dismiss both of the claims against it, arguing first that Cate has failed to establish that this court can properly exercise personal jurisdiction over it. Aerotek also argues that both counts should be dismissed for failure to state a claim, pursuant to FED. R. CIV. P. 12(b)(6), because Cate has failed to allege any state action to support his constitutional claims.

---

[4] Breach of contract (Count I), wrongful termination (Counts II and III), violation of Cate's protected right to procedural due process (Count IV), substantive due process (Count V), and free speech (Count VI) arising from the United States Constitution, and violation of Cate's protected right to procedural due process (Count VII), substantive due process (Count VIII), and free speech (Count IX) arising from the New Hampshire Constitution.

I.   <u>Personal Jurisdiction</u>

When a defendant challenges personal jurisdiction, the burden falls on the plaintiff "to demonstrate the existence of every fact required to satisfy both the forum's long-arm statute and the Due Process Clause of the Constitution."  <u>Negrón-Torres</u>, 478 F.3d at 24.  Where, as here, the long-arm statute is coextensive with the constitutional limits of due process, the two inquiries become one, focusing solely on whether jurisdiction comports with due process.  <u>See</u> <u>id.</u>; <u>Computac, Inc. v. Dixie News Co.</u>, 124 N.H. 350, 355 (1983) (explaining that New Hampshire's long-arm statute is "coextensive with constitutional limitations").

Personal jurisdiction comes in two varieties: specific and general.  <u>See</u> <u>Negrón-Torres</u>, 478 F.3d at 24.  Key to both is the existence of "minimum contacts" between the nonresident defendant and the forum.  <u>Id.</u>  Cate asserts that this court can exercise personal jurisdiction over Aerotek because Aerotek "initiated, negotiated, and finalized contractual obligations for [Cate's] employment" by telephone, while Cate was at his home in Plymouth, New Hampshire.  Pl.'s Resp. Mot. Dismiss ¶ 1.

A.   <u>Specific Personal Jurisdiction</u>

Specific personal jurisdiction exists "'where the cause of action arises directly out of, or relates to, the defendant's forum-based contacts.'" <u>Negrón-Torres</u>, 478 F.3d at 24 (quoting <u>United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp.</u>, 960 F.2d 1080, 1088-89 (1st Cir. 1992)).  The Court of Appeals for this circuit has explained that in considering whether a plaintiff has alleged sufficient facts to support a finding of specific jurisdiction, the court "'divides the constitutional analysis into three categories: relatedness, purposeful availment, and reasonableness.'"  <u>Id.</u> (quoting <u>Platten v. HG Berm. Exempted Ltd.</u>, 437 F.3d 118, 135 (1st Cir. 2006)).  The reasonableness inquiry is considered in terms of certain so-called "Gestalt factors."  <u>Sawtelle v. Farrell</u>, 70 F.3d 1381, 1389 (1st Cir. 1995).  "'[A]n affirmative finding on each of the three elements of the test is required to support a finding of specific jurisdiction.'" <u>Negrón-Torres</u>, 478 F.3d at 24-25 (quoting <u>Phillips Exeter Academy v. Howard Phillips Fund</u>, 196 F.3d 284, 288 (1st Cir. 1999)).

The relatedness inquiry is "not an open door" and requires a "material connection" between the defendant and the forum.  <u>Id.</u> at 25.  A finding of relatedness requires that the plaintiff's

9

action arises directly "out of the specific contacts between the defendant and the forum state." Sawtelle, 70 F.3d at 1389.  Put differently, for a finding of relatedness, the plaintiff's claim must arise out of, or relate to the defendant's in-forum activities.  Id., 70 F.3d 1381, 1389 (1st Cir. 1995) (citing Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 206 (1st Cir. 1994)).

The record in this case establishes that the claims against Aerotek do not arise out of its limited activities in New Hampshire.  It is clear that the phone calls from Aerotek to Cate, directed to his home in Plymouth, constitute contacts for the purpose of a personal jurisdiction analysis.  See id. at 1389-90 (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476 (1985)).  But the action for which Cate seeks redress, that is, the allegedly improper termination of his employment, took place entirely outside New Hampshire.  Cate was terminated by Aerotek, headquartered in Hanover, Maryland, with a field office in Piscataway, New Jersey, from an Albany, New York, job site owned by PSEG, a company headquartered in Newark, New Jersey.  Although the e-mail that eventually led to Cate's dismissal was sent by Cate from his New Hampshire home, there is no allegation that the decision to terminate Cate was made in New Hampshire.  The mere

fact that the impact of the decision to terminate Cate was felt by him in New Hampshire is not, without more, sufficient to establish relatedness.  See id. at 1390.

The second prong of the specific personal jurisdiction test requires the court to consider whether the defendant's contacts with the forum state "'represent a purposeful availment of the privilege of conducting activities in the forum state.'"  Id. at 1389 (quoting 163 Pleasant St. Corp., 960 F.2d at 1089). Specifically, the court looks to whether the defendant "engaged in any purposeful activity related to the forum that would make the exercise of jurisdiction fair, just, or reasonable."  Id. at 1391 (quoting Rush v. Savchuk, 444 U.S. 320, 329 (1980)) (quotation marks omitted).  In this case nothing in the pleadings suggests that Aerotek purposefully directed any of its conduct at New Hampshire, aside from contacting Cate to negotiate an employment arrangement.  Although Cate may have signed the employment contract while he was in New Hampshire, the contract does not call for the application of New Hampshire law, and none of the parties' obligations arising from the contract require a New Hampshire presence.  To the contrary, the contract is clear that the work is to be performed at the Albany, New York, work site.  Based upon the allegations set forth in the complaint, it

cannot be said that Aerotek has purposefully availed itself of the privilege of doing business in New Hampshire.

The third and final prong of the three-part specific personal jurisdiction inquiry asks whether exercising jurisdiction is reasonable in light of various Gestalt factors. See id. at 1394. Specifically, the court considers "(1) the defendant's burden of appearing; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the judicial system's interest in obtaining the most effective resolution of the controversy; and (5) the common interests of all sovereigns in promoting substantive social policies." Id. (quoting Burger King, 471 U.S. at 477). A weak showing on relatedness and purposeful availment requires the defendant to show less in terms of unreasonableness to defeat jurisdiction, while a strong showing of reasonableness "may serve to fortify a borderline showing of relatedness and purposefulness." See id.

Although litigating this case in New Hampshire would be more convenient for Cate, and the burden on Aerotek to appear in New Hampshire is unlikely to be significantly greater than the burden of litigating it elsewhere, there is little judicial or sovereign

interest in resolving the matter here.  The only apparent connection between New Hampshire and this case is that the plaintiff happens to live here.  The contract at issue does not require the court to apply New Hampshire law, and the employment relationship, the conduct leading to discharge, and the subsequent alleged improper termination, all took place outside of the state.  Moreover, it is quite likely that a majority of the key witnesses reside outside of the state as well.  Taken together, the Gestalt factors favor finding that New Hampshire is not an appropriate forum in which to litigate this case.

   Because plaintiff has failed to satisfy the relatedness and purposeful availment tests, and because the Gestalt factors weigh heavily against exercising personal jurisdiction over Aerotek in this forum, the court finds that it lacks specific personal jurisdiction over Aerotek.

   B.   <u>General Personal Jurisdiction</u>

   In contrast to specific personal jurisdiction, a court may exercise general personal jurisdiction when "'the litigation is not directly founded on the defendant's forum-based contacts, but the defendant has nevertheless engaged in the continuous and systematic activity, unrelated to the suit, in the forum state.'"

Negrón-Torres, 478 F.3d at 25 (quoting 163 Pleasant St. Corp., 960 F.2d at 1088 (1st Cir. 1992)).

The pleadings in this case do not contain allegations that Aerotek engaged in any sort of continuous or systematic activity in New Hampshire.  Cate alleges only that Aerotek contacted him in New Hampshire on several occasions to negotiate an employment agreement.  Such occasional passing contacts are insufficient to establish general personal jurisdiction over Aerotek.

II.  State Action

Because this litigation is dismissed on jurisdictional grounds, the court need not consider Cate's constitutional claims.  It is worth noting however, that ordinarily, a constitutional violation does not occur when a private person or entity acts.  Put differently, the state and federal constitutions protect individuals from governmental action; they do not, generally, restrict the conduct of private actors.  See, e.g., Yeo v. Town of Lexington, 131 F.3d 241, 248-49 (1st Cir. 1997) ("If there is no state action, then the court may not impose [federal] constitutional obligations on (and thus restrict the freedom of) private actors"); Cambridge Mut. Fire Ins. Co. v. Crete, 150 N.H. 673, 673 (2004) ("Absent some action that may

14

fairly be attributed to the State, there can be no [state] constitutional violation") (citing In re Dumaine, 135 N.H. 103, 109 (1991)); see also Jordan v. Verizon of New England, Inc., 2005 DNH 102, *7-9 (July 5, 2005) (constitutional claims against a private employer dismissed for want of state action).

Cate does not allege that either Aerotek or PSEG is a state actor, nor does Cate allege that either Aerotek or PSEG acted in concert with a state actor in terminating his employment. Instead, Cate argues that Aerotek and PSEG should be treated as state actors because the energy industry is subject to substantial government regulation and oversight.  The law is clear, however, that mere government regulation does not convert a private entity into a government actor for constitutional purposes.  See Jackson v. Metro. Edison Co., 419 U.S. 345, 350 (1974) (private but regulated electricity company which terminated service to a customer was not a state actor). Accordingly, even if this court had personal jurisdiction over the defendant, Cate's complaint would still warrant dismissal because it fails to state a viable claim.

### Conclusion

As the court lacks personal jurisdiction, Aerotek's motion to dismiss (document no. 7) is hereby granted. The Clerk of Court shall enter judgment in accordance with this order and close the case.

**SO ORDERED.**

_____
Steven J. McAuliffe
Chief Judge

August 23, 2007

cc: Brendon A. Cate, pro se
　　 David a. Anderson, Esq.